NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

INTAROME FRAGRANCE & FLAVOR  :
CORP.,                       :
                             :
            Plaintiff,       :         Civ. No. 07-873 (DRD)
                             :
      v.                     :
                             :
MICHAEL G. ZARKADES,         :         **O P I N I O N**
                             :
            Defendant.       :
                             :

---

SCHIFFMAN, ABRAHAM, KAUFMAN & RITTER, P.C.
Robert L. Ritter, Esq.
Three University Plaza
P.O. Box 568
Hackensack, New Jersey 07602-0568

*Attorneys for Plaintiff Intarome Fragrance & Flavor Corp.*


LAW OFFICES OF ROBERT RICH
Robert M. Rich, Esq.
25 Pompton Avenue
Verona, New Jersey 07044-2915

*Attorney for Defendant Michael G. Zarkades*


**DEBEVOISE, Senior District Judge**

### I. PROCEDURAL HISTORY

This matter comes before the court on plaintiff, Intarome Fragrance & Flavor Corp.'s

("Plaintiff" or "Intarome") application by Order to Show Cause for an order granting the entry of a preliminary injunction enjoining defendant, Michael G. Zarkades ("Defendant" or "Zarkades"), a former employee of Intarome.  The application seeks to enjoin Defendant "from disclosing or utilizing confidential customer information and from contacting, soliciting and stealing Intarome's customers and product formula, as well as competing with Intarome, in accordance with the terms and provisions of the Stock Subscription Agreement and Employment Agreement."  (Pl.'s Br. 3).

On or about February 5, 2007, Plaintiff filed a verified complaint in the Superior Court of New Jersey, Chancery Division, Bergen County.  On February 22, 2007, Defendant filed a Notice of Removal to this court.  The Complaint alleges: (1) breach of non-compete and non-disclosure provisions; (2) tortious interference with prospective economic advantage; (3) misappropriation of confidential information; (4) conversion of customers and confidential information; (5) unfair competition; and (6) unjust enrichment.

## II.  BACKGROUND

Intarome "is a manufacturer of fragrances and flavors for use by commercial and industrial clients in the production of consumer and non-consumer products" with its principal place of business in Norwood, New Jersey.  (Compl. ¶ 1).  Zarkades was employed by Intarome as Executive Vice President of Sales from 1997 to May 22, 2006.  He worked out of his San Clemente, California home office and was responsible for directing Intarome's nationwide sales force.  (Compl. ¶ 3-4) (Declaration of Michael Zarkades ("Zarkades Decl.") ¶ 6).

Zarkades entered into an employment agreement with Intarome dated June 29, 1999 (the

"Employment Agreement") which included, *inter alia*, a non-disclosure provision that states:

> 14. PROPRIETARY INFORMATION: The Employee acknowledges that during the course of his employment, he may be privy to information that is a corporate trade secret, which information is never to be divulged to any other party outside of the Corporation. In the event such were to occur, the Corporation would be entitled to seek full legal and equitable relief.

(Compl. ¶ 8, Compl. Ex. "A" ¶ 14) (the "Non-Disclosure Provision"). Additionally, Zarkades entered into a "Subscription Agreement For Shares of Intarome Fragrance Corporation" (the "Stock Subscription Agreement"), which provided that in exchange for Zarkades making payments of $10,000 per year, he would receive 2,500 shares in Intarome per year. (Compl. ¶ 10, Compl. Ex. "B" ¶ 1). The Stock Subscription Agreement also prohibited him from competing with Intarome for a period of one year after his employment terminated and states:

> 7. In consideration of his right to subscribe to shares of Intarome as provided herein and to require Intarome to repurchase such shares as provided herein, the Subscriber agrees that if for any reason his present employment at will with Intarome shall terminate, he shall not compete within the United States of America in the business in which Intarome is engaged, directly or indirectly, whether as an employee, shareholder, partner, or otherwise, for a period of one (1) full year after the date on which his employment with Intarome terminates.

(Compl. ¶ 11, Compl. Ex. "B" ¶ 7) (the "Non-Compete Provision").

On May 22, 2006, Zarkades was terminated. (Compl. ¶ 12). Intarome alleges that the termination stemmed from his insubordination, failure to report to his superiors, and lack of accountability. (Id.). Intarome claims that through his employment, Zarkades "was given full access to Intarome's confidential trade secrets to confidential fragrances and flavor formulas of Intarome as well as its confidential customer information." (Compl. ¶ 5). Intarome alleges that

3

since his termination, Zarkades: (1) "has been working directly in the same business and field as Intarome in breach of the non-compete provision in the Stock Subscription Agreement"; (2) "has been soliciting existing customers of Intarome in breach of the Stock Subscription Agreement"; and (3) "is utilizing confidential formula and financial information that is the sole property of Intarome . . . to assist in his solicitation of existing customers of Intarome, in breach of his Employment Agreement." (Compl. ¶ 13-14, 16).

After Zarkades's termination, on June 1, 2006, he began working for E.T. Horn Company ("E.T. Horn"), located in La Mirada, California, as Vice President of Ingredients. (Zarkades Decl. ¶ 3). E.T. Horn "is a regional distributor, supplier, marketer and manufacturer of specialty chemicals and food ingredients." (Id. ¶ 4). E.T. Horn supplies flavors, but does not sell fragrances. (Id. ¶ 4-5). E.T. Horn has customers, such as Genlabs Corporation ("Genlabs"), to which it has sold chemicals for many years, which also purchase products from Intarome. (Id. ¶ 5). Zarkades's job duties at E.T. Horn include managing the ingredients business, managing over forty sales professionals, building relationships with suppliers and customers, and seeking new business opportunities with suppliers. (Id. ¶ 6).

On January 23, 2007, Intarome received an e-mail, which was addressed to Zarkades at his Intarome address. (Compl. ¶ 17, Ex. "C"). The e-mail is from Solaimon Jonatan ("Jonatan") and is entitled "Approval on Samples that you shipped 12/21/06." (Compl. Ex. "C"). The e-mail states:

> Mike,
> Your fragrance samples shipped on 12/21/06 are good and matched
> to the original fragrances:
> 26-238 Bqt CD

>26-292 Hand Soap
>26-307 Coconut
>26-509 UOP
>26-315 Pineapple
>Thank you.
>Sol.

(Compl. Ex. "C") (the "January 23, 2007 e-mail").

Plaintiff alleges that the e-mail establishes that Zarkades is competing with Intarome and soliciting its clientele. (Compl. ¶ 17). Plaintiff claims that "Genlabs is a key customer of Intarome and has generated in excess of $200,000.00 in revenue per year for Intarome for at least the last five years." (Compl. ¶ 18). It alleges that Jonatan is Genlabs's director of Research and Development and that all of the products referenced in the e-mail are products developed by Intarome and sold to Genlabs. (Id.). Plaintiff alleges that "[t]he e-mail demonstrates that Zarkades had samples of the Intarome products, that Zarkades 'duplicated' the products, and then sent his 'duplicate samples' back to Genlab for its approval." (Compl. ¶ 19).

### III.  DISCUSSION

**A.     Standard for a Preliminary Injunction**

Injunctive relief "is an extraordinary remedy, which should only be granted in limited circumstances." Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988) (citations omitted). The movant "must demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Id. (quoting Morton v. Beyer, 822 F.2d 364, 367 (3d Cir. 1987)). Four factors must be considered when ruling on a motion for a preliminary injunction: "(1) whether the movant has shown a reasonable probability

5

of success on the merits; (2) whether the movant will be irreparably injured by denial of relief; (3) whether granting preliminary will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 879 (3d Cir. 1997).

**B.     Probability of Success on the Merits[1]**

    **1.     Breach of the Non-Compete Provision**

Under New Jersey's Solari-Whitmyer three-prong test, a restrictive covenant is reasonable if it: (1) simply protects the legitimate interests of the employer; (2) imposes no undue hardship on the employee; and (3) is not injurious to the public. Solari Indus., Inc. v. Malady, 55 N.J. 571, 576 (1970); Whitmyer Bros., Inc. v. Doyle, 58 N.J. 25, 32-33 (1971). "The validity and enforceability of a covenant against competition is fact-sensitive and must be determined in light of the facts of the case." Graziano v. Grant, 326 N.J. Super. 328, 343 (App. Div. 1999).

Plaintiff claims that the Non-Compete Provision "is enforceable as it seeks to protect business interests in the fragrance industry and only places restrictions on Zarkades for a reasonably limited duration." (Pl.'s Br. 9). Additionally, Plaintiff contends that the geographic area of the covenant is reasonable and that the covenant does not contravene a public interest because the relationships at issue implicate only economic interests. (Id. at 10).

As to its claim for breach of the Non-Compete Provision, Plaintiff argues that "Zarkades has set out on a deliberate course of conduct in direct violation of the restrictive covenant

---

[1] As the Complaint alleges several causes of action, the court will address each separately to assess the probability of success.

6

agreement." (Id. at 11). It contends that Zarkades has been competing with Plaintiff in the fragrance industry and is selling replicas of Plaintiff's fragrances to Plaintiff's clientele. (Id.). In support of this allegation, Plaintiff relies on a single piece of evidence - the January 23, 2007 e-mail. Plaintiff claims that the products listed in the e-mail are "Intarome's product identifiers with slight variations." (Id.). Plaintiff argues that "[t]he e-mail unequivocally demonstrates that Zarkades is competing with Intarome in direct violation of the non-compete provision" and that "he is stealing Intarome's customers." (Id.). Plaintiff argues that because Zarkades is reaping the benefits of stock ownership while competing against Plaintiff in violation of the Stock Subscription Agreement, a preliminary injunction is needed to maintain the status quo and prevent further damages to Plaintiff.

Defendant contends that while "there exists serious questions regarding the validity and legality of [the Non-Compete Provision] . . . the court need not address this issue at his time, as Intarome will be unable to demonstrate that Zarkades breached the terms of this provision." (Def.'s Br. 12). Defendant claims that he has not competed against Plaintiff, that his current employer, E.T. Horn, is not a competitor of Intarome, and that the two companies are in two entirely different lines of business. (Id. at 12-13). Zarkades argues that "[a]s such, any information about the sales of Intarome . . . have no application or significance to the pricing and sales of the broad range of chemicals and specialty ingredients sold by E.T. Horn." (Id. at 13).

Defendant contends that the alleged breach of the Non-Compete Provision revolves around Genlabs, which was a shared client of both Intarome and E.T. Horn. Defendant claims that shortly after he was terminated, and for several months thereafter, Intarome began having difficulties serving its West Coast customers. (Zarkades Decl. ¶ 12). He claims that he was

contacted by many customers who were having service problems, including Genlabs. (Id.). Zarkades contends that he was contacted by Mike Dobbins ("Dobbins"), Executive Vice President of Purchasing for Genlabs, who told Zarkades that he was considering pulling his business from Intarome because he was having problems securing fragrances from Intarome and that he wanted to find a back-up fragrance supplier. (Id. ¶ 13-14). Thereafter, Zarkades claims that he spoke with Jonatan, who Dobbins directed to provide Zarkades with samples of Intarome fragrances for the alternate supplier to analyze and duplicate. (Id. ¶ 15). Zarkades contends that these samples were forwarded to Monarch Fragrances ("Monarch") in Georgia, as a professional courtesy and that at no time did he benefit financially from this transaction. (Id. ¶ 15-17). Zarkades claims that he does not know why Jonatan sent the January 23, 2007 e-mail to his Intarome address and that it appears that Jonatan was just informing him about how the re-engineered samples from Monarch turned out. (Id. ¶ 18).

Zarkades contends that since he left Intarome, Genlabs has not purchased any fragrances from Monarch, Zarkades, or E.T. Horn. (Def.'s Br. 14); (Declaration of Solaimon Jonatan ("Jonatan Decl.") ¶ 13); (Declaration of Michael Dobbins ("Dobbins Decl.") ¶ 14). Additionally, Zarkades claims that: (1) from 2006 to present, Genlabs has not stopped purchasing fragrances from Intarome (Zarkades Decl. ¶ 16); ("Dobbins Decl." ¶ 15); (2) Genlabs has not agreed to purchase fragrances from Monarch or Zarkades in the future ("Dobbins Decl." ¶ 15); (Declaration of Perry Pellegrino ("Pellegrino Decl." ¶ 8); (3) he has not received any financial benefit for providing Genlabs with an alternative supplier ("Dobbins Decl." ¶ 16); (Zarkades Decl. ¶ 17); and (4) he has never been hired or retained by Monarch to sell its products. ("Pellegrino Decl." ¶ 5,9).

In evaluating whether a movant has shown a reasonable probability of success on the merits, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a *prima facie* case showing a reasonable probability that it will prevail in the merits." Medavante, Inc. v. Proxymed, Inc., No. 06-3248, 2006 WL 2927623, at *4 (D.N.J. Oct. 12, 2006) (alteration in original) (quoting Oburn v. Shapp, 521 F.2d 142, 148 (3d Cir. 1975).

Thus, the issue here is whether the January 23, 2007 e-mail combined with Zarkades's own representations regarding the events surrounding the e-mail, amounts to a breach of the Non-Compete Provision. According to Zarkades, Dobbins directed Jonatan to supply Zarkades with samples of Intarome fragrances, which Zarkades then sent to Monarch so that Monarch could duplicate them as a "professional courtesy." The issue then becomes whether Zarkades's act was, as he characterizes it, a "professional courtesy," or whether this act violated the Non-Compete Provision, which states in part that Zarkades "shall not compete within the United States of America in the business in which Intarome is engaged, directly or indirectly, whether as an employee, shareholder, partner, or otherwise . . . ."

The court finds that Plaintiff has not shown a reasonable probability that it will prevail on the merits of its claim. At the outset, the January 23, 2007 e-mail justifiably aroused enough suspicion for Intarome to make an inquiry into its purpose. Intarome made that inquiry by filing the present application, and Zarkades gave a plausible explanation based on his long-standing business relationship with Dobbins and Genlabs, that was corroborated by the declarations of the heads of Genlabs and Monarch. Thus, the court does not find that Zarkades violated the Non-Compete Provision.

9

### 2. Breach of the Non-Disclosure Provision

Plaintiff alleges that Zarkades is replicating Intarome's fragrances and marketing them to Genlabs. Plaintiff contends that "[a]rguably, these matched Intarome fragrances were accomplished by utilization of Intarome's confidential formulas and fragrances." (Pl.'s Br. 12). Plaintiff also claims that Zarkades is using knowledge of Intarome's customer identities as well as their pricing, discounts and preferences. (Id. at 14). Here, Plaintiff has failed to demonstrate a reasonable probability that it will prevail in the merits, where the January 23, 2007 e-mail and Zarkades's action do not provide a firm basis for these allegations.

### 3. Tortious Interference With Prospective Economic Advantage

The elements of the tort of tortious interference with prospective economic advantage are: (1) a prospective economic or contractual relationship; (2) intentional interference- interference must be without justification or excuse; (3) interference must cause the loss of prospective gain; and (4) the interference must result in damages. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751-52 (1989).

Plaintiff argues that "Zarkades has interfered with Intarome's business relationships by not merely stealing Intarome's customers, but by luring away Intarome's customers by way of replication . . . by use of confidential and proprietary formulas." (Pl.'s Br. 18). Plaintiff contends that "Zarkades has clearly and maliciously interfered with Intarome's business, including its customer relationships." (Id.).

Defendant argues that: (1) Plaintiff was not damaged by any of the alleged actions because Genlabs has not terminated its relationship with Intarome or retained the services of

Monarch; (2) Plaintiff will be unable to demonstrate that Zarkades's alleged interference was intentional where Zarkades initially advised Genlabs to contact Intarome when they were having delivery problems, where Zarkades told Dobbins that his shareholder interest would be affected in Intarome lost business, and where Genlabs decided to replicate Intarome's fragrance; and (3) there is no evidence to support a claim that any interference caused a loss of prospective gain. (Def.'s Br. 19).

Based on the submissions of the parties, the court finds that Plaintiff has not demonstrated a sufficient showing of a reasonable probability that it will prevail on the merits. Even assuming that Zarkades's actions were found to have been intentional, there does not appear to be any loss of prospective gain or any damages.

### 4. Conversion and Misappropriation of Confidential Information

Conversion "is the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights." Advanced Enters. Recycling, Inc. v. Bercaw, 376 N.J. Super. 153, 161 (App. Div. 2005). Plaintiff claims that Zarkades is liable under a conversion theory because he utilized Intarome's customer's identities and disclosed and utilized customer information for his own benefit. Plaintiff has not alleged that any tangible property was actually converted.

As Plaintiff fails to cite any support for the proposition that anything other than tangible personal property, or tangible evidence of title to intangible or real property is subject to conversion, it is unlikely that Plaintiff will prevail on that claim. See Cameco, Inc. v. Gedicke, 299 N.J. Super. 203, 217 (App. Div. 1997). Additionally, even if the information was property

subject to conversion, there is nothing that indicates that Defendant used Intarome's customer information, or that if Defendant did use it, that it had any effect on Plaintiff. Id. Thus, there is not a reasonable probability that Plaintiff will prevail on the merits of its conversion claim.

Plaintiff also asserts that Zarkades has wrongfully misappropriated Intarome's customer information. To prevail upon a claim for misappropriation of a trade secret, Plaintiff must establish that :

> (1) a trade secret exists; (2) the information comprising the trade secret was communicated in confidence by plaintiff to the employee; (3) the secret information was disclosed by that employee and in breach of that confidence; (4) the secret information was acquired by a competitor with knowledge of the employee's breach of confidence; (5) the secret information was used by the competitor to the detriment of plaintiff; and (6) the plaintiff took precautions to maintain the secrecy of the trade secret.

Rycoline Products, Inc. v. Walsh, 334 N.J. Super. 62, 71 (App. Div. 2000).

Assuming, *arguendo*, that the alleged misappropriated information was in fact a trade secret, Plaintiff apparently relies on the following to support the last four factors: "It is now evident that Zarkades is running his own business and is replicating Intarome's fragrances and marketing those fragrances to the public with the use of Intarome's information to which Zarkades was privy during his tenure at Intarome." (Pl.'s Br. 16). Although not stated directly, this allegation apparently stems from the January 23, 2007 e-mail. Plaintiff has not demonstrated a reasonable probability that it will prevail on the merits of its misappropriation claim.

    5.    **Unfair Competition**

"Competition which violates established business ethics and customs is unlawful." C.R.

Bard, Inc. v. Wordtronics Corp., 235 N.J. Super. 168, 174 (Law Div. 1989). "[I]f a competitor uses violence or engages in fraud or intimidation, or misrepresents, or threatens civil or criminal actions, or violates the law, then the competition is considered to be outside of permissible parameters, and liability will ensue." Id.

Plaintiff alleges that Zarkades "engaged in unfair competition by misappropriating Intarome's commercial or pecuniary property, namely its customers, confidential customer information, formulas, product and marketing information." (Pl.'s Br. 17). It claims that Zarkades's "conduct is deceptive and unfair and the type of conduct that forms a basis of an unfair competition claim." (Id.).

Without mentioning specific acts that constitute unfair competition, one can only assume that Plaintiff is relying on the January 23, 2007 e-mail and/or Zarkades's representations to support the claim. These actions are insufficient to support a conclusion that Plaintiff has a reasonable probability that it will prevail on the merits of its unfair competition claim.[2]

**6.     Unjust Enrichment**

To prevail on a claim for unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." Cameco, 299 N.J. Super. at 218. The doctrine "requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id.

---

[2]Although Defendant invites the court to impose Rule 11 sanctions on Plaintiff, arguing that the present action is only being pursued as a means to cheat Defendant out of his Intarome stock, the court declines to do so at this time.

Plaintiff argues that Zarkades has been unjustly enriched because: (1) he "has engaged in a course of conduct that has resulted in harm to Intarome as well as unjust enrichment to Zarkades"; and (2) "Zarkades is holding Intarome stock and not abiding by the terms and conditions by which the stock was issued." (Pl.'s Br. 17).

Plaintiff has failed to demonstrate a reasonable probability that it will prevail on the merits of this claim. The January 23, 2007 e-mail, on which Plaintiff's allegations are based, provides no basis for an unjust enrichment claim, especially where there are no specific allegations that Zarkades received any benefit from the alleged transactions or any allegations that Plaintiff expected remuneration from Zarkades.

## C.   Irreparable Injury

"[T]o show irreparable harm a plaintiff must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.' Economic loss does not constitute irreparable harm." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994) (citation omitted). "[A] plaintiff must demonstrate a clear showing of immediate, irreparable injury; an injunction may not be used to eliminate the possibility of a remote future injury." Thorn v. Smith, No. 06-3049, 2006 WL 3522516, at *1 (3d Cir. Dec. 7, 2006). "A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity." Acierno, 40 F.3d at 653.

Plaintiff argues that it will "suffer immediate and irreparable harm if Zarkades is not restrained and enjoined from competing with Intarome and from disclosing and using Intarome's confidential customer information to solicit customers to Intarome's detriment." (Pl.'s Br. 19).

14

Defendant contends that "based upon the uncontradicted Declarations of Genlab and Monarch employees, Intarome has not suffered any irreparable harm or even *de minimis* harm to date." (Def.'s Br. 21). Defendant also argues that with Zarkades working in an unrelated field for a company which is not a competitor of Intarome, any harm would be speculative.

The court finds that Plaintiff has not met its burden in demonstrating a clear showing of immediate, irreparable injury. The declarations and arguments presented to the court show that Zarkades is working for a new company, E.T. Horn, which sells substantially different goods than Plaintiff. Additionally, Plaintiff has presented nothing that demonstrates any harm being currently suffered. In fact, declarations by the heads of Genlabs and Monarch reveal that Genlabs has not terminated its relationship with Plaintiff and has not agreed to purchase fragrances from Monarch or Zarkades in the future. The facts presented are insufficient to sustain Plaintiff's heavy burden.

**D.     Harm to the Nonmoving Party**

Plaintiff argues that an injunction will not cause undue hardship and that it only seeks to enforce reasonable restrictions to protect its business from Zarkades's conduct. It contends that "[t]he pivotal restriction is the noncompete provision, which was a bargained provision in exchange for Zarkades possession of Intarome shares." (Pl.'s Br. 19). Plaintiff claims that "[i]f Zarkades is not restrained, there is an imminent risk that he will continue to breach the non-compete and non-disclosure provisions and will continue to engage in tortious conduct to Intarome's detriment." (Id.).

Defendant argues that he and his family will suffer great harm if the injunction is granted.

15

He contends that because his current employer provides ingredients to customers that are also customers of Intarome, he would be prevented from carrying out the duties of his employment that require him to service customers and manage sales personnel. (Def.'s Br. 22).

The court finds that to the extent Defendant is unable to perform the functions of his profession and earn an living, and to the extent the proposed relief may harm his reputation, granting a preliminary injunction will result in even greater harm to the Defendant. Indeed, "even when there is a restrictive covenant, a former employee cannot be enjoined from using his or her experience in the industry as a basis for earning a living." Subcarrier Commc'ns, Inc. v. Day, 299 N.J. Super. 634, 643 (App. Div. 1997).

**E.     Public Interest**

"Judicial enforcement of non-competition provisions of employment contracts serves the public interest by promoting stability and certainty in business and employment relationships." Wright Med. Tech., Inc. v. Somers, 37 F. Supp. 2d 673, 684 (D.N.J. 1999). Here, however, the court finds that the public interest would not be served by granting an injunction where there is no evidence that Defendant actually competed with Plaintiff in breach of the Non-Compete Provision.

### IV.  CONCLUSION

For the reasons set forth above, Intarome's application for an order granting a preliminary injunction will be denied. The court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: March 29, 2007