**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INTAROME FRAGRANCE & FLAVOR CORP.,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>    v.<br><br>MICHAEL G. ZARKADES,<br><br>    Defendant and Counter-Claimant,<br><br>    and<br><br>MICHAEL G. ZARKADES,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>DANIEL G. FUNSCH,<br><br>    Third-Party Defendant. | Civ. No. 07-873 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

James H. Forte, Esq.
SAIBER LLC
One Gateway Center, 13th Floor
Newark, New Jersey  07102-5311

   *Attorney for Plaintiff and Counterclaim Defendant Intarome Fragrance & Flavor Corp.
   and Third-Party Defendant Daniel G. Funsch*


Robert M. Rich, Esq.
LAW OFFICES OF ROBERT M. RICH

25 Pompton Avenue
Verona, New Jersey  07044

Charles H. Goldstein, Esq.
THE GOLDSTEIN LAW FIRM
8912 Burton Way
Beverly Hills, California  90211

Joseph A. Goldstein, Esq.
THE GOLDSTEIN LAW FIRM
1739 K Street, Suite 600
Washington, D.C.  20036

*Attorneys for Defendant, Counter-Claimant, and Third-Party Plaintiff Michael G. Zarkades*

**DEBEVOISE, Senior District Judge**

On February 6, 2007, Plaintiff and Counterclaim Defendant Intarome Fragrance and Flavor Corp. ("Intarome") filed a verified complaint against Michael G. Zarkades in the Superior Court of New Jersey, Law Division, alleging breach of covenants of confidentiality and non-competition, unfair competition and unjust enrichment.  Mr. Zarkades removed the action to this court, where he filed a "First Amended Cross-Complaint" on May 1, 2007 (Docket Entry No. 21) against Intarome and Third-Party Defendant Daniel G. Funsch and a "Second Amended Answer, Counterclaim and Third Party Complaint" on February 26, 2008 (Docket Entry No. 40) against Intarome and Mr. Funsch.  On September 22, 2008, Intarome and Mr. Funsch moved for partial summary judgment dismissing Counts One, Two, and Nine of the Second Amended Counterclaim ("SAC"), and limiting the compensatory damages that Zarkades may recover on (1) Counts Three, Four, and Five of the Second Amended Counterclaim, and (2) on all Counts of the Third-Party Complaint ("TPC").  On October 20, 2008, Mr. Zarkades cross-moved for partial summary judgment on Counts One, Two, and Nine of the SAC.  In an opinion and order dated

December 1, 2008, the court granted the motions of Intarome and Mr. Funsch and denied the motion of Mr. Zarkades.

On December 24, 2008, Intarome and Mr. Funsch moved for partial summary judgment dismissing Counts Three, Four, and Five of the SAC and all counts of the TPC.  In an order dated March 27, 2009, the court granted the motion of Intarome and Mr. Funsch on the claims against them for breach of fiduciary duty (Count Three of the SAC and Count One of the TPC), and denied their motion on the claims for fraud (Count Four of the SAC and Count Two of the TPC) and negligent misrepresentation (Count Five of the SAC and Count Three of the TPC) (the "March 27 Order").

Intarome and Mr. Funsch now move for reconsideration of the portion of the March 27 Order denying their motion on the claims of fraud and negligent misrepresentation.

For the reasons set forth below, Intarome and Mr. Funsch's motion will be denied.

## I.  BACKGROUND[1]

Intarome is a corporation engaged in the manufacture of fragrances and flavors for use in the production of consumer and non-consumer products.  Mr. Funsch is the President and Chief Executive Officer of Intarome.  On or about July 1, 1997, Intarome hired Mr. Zarkades as an Executive Vice President.  Mr. Zarkades remained employed with Intarome until May 22, 2006.

**A.     The Subscription Agreement**

Two years after Intarome hired Mr. Zarkades, on or about July 1, 1999, Intarome and Mr. Zarkades entered into an agreement entitled "Michael G. Zarkades Subscription Agreement for Shares of Intarome Fragrance Corporation Dated July 1, 1999" (the "Subscription Agreement").

Intarome and Mr. Zarkades were the only parties to the Subscription Agreement. In accordance with the Subscription Agreement, Mr. Zarkades paid a total of $50,000 for 12,500 shares of Intarome Class A stock. He paid $10,000 on June 30, 2000, and $40,000 on December 13, 2000.

**B.     The ESOP**

In 2001, Intarome established the Intarome Fragrance Corporation Employee Stock Ownership Plan and related Intarome Fragrance Corporation Employee Stock Ownership Trust (collectively, "ESOP"). Under the ESOP, certain Intarome shareholders exchanged their Class A Stock and Class B Stock of Intarome stock for shares of a new class of stock known as Class B ESOP Convertible Preferred Stock, and then sold their Class B ESOP Convertible Preferred Stock to the ESOP. The parties dispute the exact date of the "creation" of the ESOP, but it is undisputed that the Stock Purchase Agreement, pursuant to which some shareholders sold their Class B ESOP Convertible Preferred Stock to the ESOP, was made on September 18, 2001.

Mr. Zarkades alleged that Intarome breached the material terms of paragraph 2 of the Subscription Agreement by denying him the opportunity to sell his 12,500 shares to the ESOP on the same basis as the majority selling shareholders. In an opinion dated December 1, 2008, this court held that under the plain meaning of the Subscription Agreement, Intarome was not required to give Mr. Zarkades the opportunity to sell his shares to the ESOP. (Dec. 1, 2008 Slip Op. at 7 – 11.) Based on the plain meaning of the Subscription Agreement, this court dismissed Counts One, Two and Nine of the SAC. (Id. at 11 - 12.)

Mr. Zarkades did not sell his 12,500 shares of Class A Stock to the ESOP and, thereafter,

---

[1] A more complete discussion of the facts is contained in the court's March 27, 2009 and December 1, 2008 opinions.

Intarome paid dividends to Mr. Zarkades with respect to his 12,500 shares. The parties contest whether Mr. Zarkades wanted to sell his shares to the ESOP and whether he expressed to Mr. Funsch, or to someone else at Intarome, an interest in selling or in retaining his shares.

**C.     The March 27 Opinion**

On March 27, 2009, this court issued an opinion addressing Intarome and Mr. Funsch's motion for partial summary judgment dismissing the counts of the SAC and TPC alleging fraud, negligent misrepresentation and breach of fiduciary duty against them (the "March 27 Opinion"). In the March 27 Opinion, the court analyzed the choice of law for each of the three claims at issue (March 27, 2009 Slip Op. at 12-19 and 23-27) to determine that Mr. Zarkades's claims for fraud and negligent misrepresentation are governed by the laws of the State of New Jersey, and his claims for breach of fiduciary duty are governed by the laws of the State of Delaware. Under the applicable Delaware law, the claims for breach of fiduciary duty are time-barred and were therefore dismissed. Under the applicable New Jersey law, the claims of fraud and negligent misrepresentation are not time-barred. The court, therefore, in the March 27 Opinion analyzed the individual factors of these two claims under New Jersey law to determine if the claims were ripe for summary judgment. (Id. at 20-22.) It held that the claims of fraud and negligent misrepresentation should not be dismissed because there were issues of material fact regarding proof of the elements of these two causes of action. Intarome and Mr. Funsch now ask the court to reconsider its decision regarding Mr. Zarkades's claims of fraud and negligent misrepresentation against them.

**D.     Mr. Zarkades's Claims of Fraud and Negligent Misrepresentation**

Mr. Zarkades alleges that on two occasions between July 1 and August 20, 2001, in his capacity as Executive Vice President of Intarome, he attended meetings with Mr. Funsch at Intarome's Norwood, New Jersey corporate headquarters to discuss Intarome's current sales figures and to develop future sales strategy for the company.  For the purpose of this motion, Intarome and Mr. Funsch admit this allegation.  There is no dispute that Mr. Funsch asked Mr. Zarkades at least twice before August 20, 2001 whether Mr. Zarkades wished to sell his shares of Intarome common stock to the ESOP trust.  For the purpose of this motion, Intarome and Mr. Funsch also admit that Mr. Funsch made these inquiries of Mr. Zarkades after the two in-person meetings in New Jersey between July 1 and August 20, 2001.  For the purpose of this motion, Intarome and Mr. Funsch also admit that Mr. Funsch did not provide Mr. Zarkades with purchase price information related to the ESOP and other details of the sale.

Mr. Zarkades claims that he asked Mr. Funsch to see financial information, but Mr. Funsch refused to provide such information, which would have included the Stock Purchase Agreement, containing the material details of the sale, including the price to be paid to each of the selling shareholders and other terms and conditions of the sale.  Intarome and Mr. Funsch deny this allegation because they contend that the Stock Purchase Agreement, which contains a common stock analysis of Intarome as of August 31, 2001, did not exist as of August 20, 2001, so Mr. Funsch could not have refused to provide a document to Mr. Zarkades that did not exist.

Mr. Zarkades also alleges that Mr. Funsch told him, on each of the two occasions between July 1 and August 20, 2001 mentioned above, that if he sold his Intarome shares to the ESOP, Mr. Zarkades could no longer be an employee of Intarome.  For the purpose of this

motion, Intarome and Mr. Funsch admit this allegation and admit that Mr. Zarkades responded to Mr. Funsch that he had an employment agreement with Intarome and could not be fired for deciding to sell his shares of Intarome.  Intarome and Mr. Funsch also admit, for the purpose of this motion, that Mr. Funsch responded that it was still his belief, as President of Intarome, that Mr. Zarkades could be fired if he decided to sell his Intarome shares.

Mr. Zarkades alleges in the SAC/TPC that, on September 14, 2001, Mr. Funsch "falsely represented" to him that the ESOP transaction had closed on September 13, 2001 when, according to Mr. Zarkades, Mr. Funsch knew that the ESOP transaction would not close until September 18, 2001.  (SAC ¶ 33.)

Mr. Zarkades claims that his "primary and most significant reason" for not accepting the offers, made by Mr. Funsch between July 1 and August 20, 2001, to sell his Intarome shares was that Mr. Funsch did not fully and fairly disclose all information that was material to the purchase of the shares and did not provide the Stock Purchase Agreement, which contained the material details of the stock purchase, including the price to be paid.  Intarome and Mr. Funsch deny this allegation based on the following statement from Mr. Zarkades's October 17, 2008 Certification: "Had I been offered the opportunity by Intarome to sell my 12,200 Class A shares of stock without having to leave Intarome, I would have sold all of my stock in Intarome and received the same amount of money that Walter Zachritz received, which was $624,974."  (Certification of Michael G. Zarkades in Support of Zarkades's Motion for Partial Summary Judgment ¶ 23, October 17, 2008.)

## II.  DISCUSSION

A.  **Standard of Review for a Motion for Reconsideration**

In the District of New Jersey, Local Civil Rule 7.1(i) governs motions for reconsideration. Church & Dwight Co., Inc. v. Abbott Labs., 545 F. Supp. 2d 447, 449 (D.N.J. 2008).  The full text of Rule 7.1(i) reads:

> Motions for Reconsideration.  A motion for reconsideration shall be served and filed within 10 business days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge.  A brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed with the Notice of Motion.

L. Civ. R. 7.1(i).

The standard of review involved in a motion for reconsideration is high and relief under Rule 7.1(i) is to be granted only sparingly.  United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994).  The Court of Appeals has held that the purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985) (internal quotation marks omitted)).  "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café, 176 F.3d at 677 (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).  "The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter." Church &

Dwight, 545 F. Supp. 2d at 450 (citing United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999)).

**B.      Intarome and Mr. Funsch's Motion for Reconsideration**

Intarome and Mr. Funsch argue that the court did not consider one of their arguments in favor of granting summary judgment to dismiss Mr. Zarkades's claims of fraud and negligent misrepresentation against them. They contend that they argued in their motion for summary judgment that Mr. Zarkades cannot prove the element of damages, as required for a successful claim of fraud or negligent misrepresentation, because he admitted that Mr. Funsch's offer was incomplete in that it lacked "the material details of the sale including the price to be paid to each of the selling shareholders, and the other terms and conditions of the sale" and therefore was not an offer which could ripen into an enforceable agreement. (Pls.' Mot. Reconsideration at 16-17.) Because Intarome and Mr. Funsch did include this argument in their motion for summary judgment and the court did not address this argument in its March 27 Opinion, it will do so now.

**C.      Standard of Review for a Motion for Summary Judgment**

Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

In a motion for summary judgment, the moving party has the burden of showing that no

genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine issue of fact exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and determine the truth of the matter, but, rather, to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate.

**D.     Mr. Zarkades's Claims for Fraud and Negligent Misrepresentation**

Mr. Zarkades's claims of fraud against Intarome and Mr. Funsch in the SAC and TPC are based on three allegations: (1) that Mr. Funsch told him that the ESOP transaction had closed on September 13, 2001 when, according to Mr. Zarkades, Mr. Funsch knew that the transaction would not close until September 18, 2001; (2) that Mr. Funsch told Mr. Zarkades that if he sold his shares to the ESOP, he could not longer be employed by Intarome, although Mr. Funsch knew this statement to be untrue; and (3) that Mr. Funsch concealed and failed to disclose to Mr. Zarkades all information material to the purchase of the Class A shares by the ESOP, including a

copy of the Stock Purchase Agreement. Mr. Zarkades's claims of negligent misrepresentation against Intarome and Mr. Funsch are based on the first two factors upon which he bases his allegations of fraud. Mr. Zarkades alleges that he relied upon these "material misrepresentations" made knowingly by Mr. Funsch on behalf of Intarome, and was therefore unable to make an informed decision regarding whether to sell his Class A shares to the ESOP.

### i. *Common Law Fraud*

The five elements of common law fraud are: "(1) a material misrepresentation of the presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) a reasonable reliance thereon by the other person; and (5) resultant damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). For the purpose of their motion for summary judgment only, Intarome and Mr. Funsch admit the first three elements required for proof of common law fraud. In this motion for reconsideration, they ask the court to reconsider their argument that Mr. Zarkades cannot prove the "resultant damages" because Mr. Funsch did not make an offer that could develop into an enforceable agreement.

Regarding Intarome and Mr. Funsch's argument that Mr. Zarkades cannot prove the "resultant damages" required as the fifth element of common law fraud, this court stated in its March 27 Opinion:

> [Intarome and Mr. Funsch] argue that Mr. Zarkades did not have a legally enforceable right to sell his shares and, thus, cannot establish that Mr. Funsch's alleged misrepresentations and concealments caused him any damages. While Intarome and Mr. Funsch are correct that terms of the Subscription Agreement did not require Intarome to give Mr. Zarkades the opportunity to sell his shares to the ESOP, it does not follow that Mr. Zarkades had no legally enforceable right to sell his shares. As the rightful owner of those

11

>shares, if someone offered to buy them, Mr. Zarkades was free to accept that offer. If Mr. Funsch did offer to purchase Mr. Zarkades's shares of Intarome, Mr. Zarkades had the right to accept that offer. If, in reliance on Mr. Funsch's misrepresentations, Mr. Zarkades did not accept that offer and was damaged as a result, he may be able to satisfy the fifth element required to prove common law fraud.

(March 27, 2009 Slip Op. at 21-22.)

Intarome and Mr. Funsch argue that Mr. Funsch's "alleged offer" did not include the purchase price or other material terms and thus could not ripen into an enforceable agreement.[2] To support their argument, Intarome and Mr. Funsch cite to Weichert Realtors Co. v. Ryan, 128 N.J. 427, 435 (1992), for the proposition that when "parties do not agree to one or more essential terms . . . courts generally hold that the agreement is unenforceable." (Pls.' Mot. Reconsideration at 17.) While this may be an accurate statement of the law regarding the enforceability of contracts, Intarome and Mr. Funsch misread the court's March 27 Opinion and are incorrect in the next step of their argument – namely, that in order to prove the required damages for a claim of common law fraud, one must have a "legally enforceable agreement." Intarome and Mr. Funsch cite to no authority requiring that in order to prove "detriment" (damages) as a result of reliance on a fraudulent or negligent misrepresentation, one must have entered into a legally enforceable contract. Indeed, if this were a requirement, claims of fraud would not exist outside claims for breach of contract.

---

[2] Intarome and Mr. Funsch, however, admit that Mr. Funsch did not provide Mr. Zarkades with purchase price information related to the ESOP and other details of the sale only for the purpose of this motion.

12

Intarome and Mr. Funsch admit both (1) that Mr. Funsch asked Mr. Zarkades, at least twice before August 20, 2001, whether Mr. Zarkades wished to sell his shares of Intarome common stock to the ESOP trust; and (2) (for the purpose of this motion only) that Mr. Funsch told Mr. Zarkades that if Mr. Zarkades sold his Intarome shares, he could no longer be an employee of Intarome.  Mr. Zarkades claims that he decided not to sell his shares based on Mr. Funsch's statement that he could no longer be an employee of Intarome if he sold them and because he was not provided the material details of the sale.  Intarome and Mr. Funsch do not deny that Mr. Funsch asked Mr. Zarkades whether he wished to sell his shares to the ESOP.  The fact that Mr. Funsch did not supply all of the material terms of the sale to Mr. Zarkades does not necessarily mean that Mr. Zarkades was not damaged by reliance on Mr. Funsch's misrepresentation regarding his continued employment at Intarome if he sold his shares.  There remains an issue of fact as to whether, if Mr. Zarkades told Mr. Funsch that he did indeed wish to sell his shares to the ESOP, he would have been able to do so.  Again, simply because Mr. Funsch may not have made a legally enforceable offer to buy Mr. Zarkades's shares does not mean that Mr. Zarkades was not damaged by his decision, allegedly made in reliance on Mr. Funsch's misrepresentation, not to pursue the option to sell his shares to the ESOP.[3]

---

[3] Additionally, it is possible to prove the element of "resultant damages" in common law fraud by proving "some loss, injury or detriment," even if one cannot establish compensatory damages.  Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 53 (1984).  Mr. Zarkades seeks punitive damages in his claims of fraud against Intarome and Mr. Zarkades.  (SAC ¶ 72; TPC ¶ 26.)  The Supreme Court of New Jersey has held that a party may be awarded punitive damages for common law fraud even if he does recover compensatory damages.  Nappe, 97 N.J. at 53.  Thus, Mr. Zarkades may be able to prevail on his claims of common law fraud even if he does not prove compensatory damages.

Because there are issues of material fact regarding proof of the elements of common law fraud, summary judgment dismissing Mr. Zarkades's claims of fraud is not appropriate and the motion for reconsideration by Intarome and Mr. Funsch is denied.

### ii.     *Negligent Misrepresentation*

The elements of negligent misrepresentation are essentially the same as those of common law fraud except negligent misrepresentation does not require scienter.  "Negligent misrepresentation is . . . [a]n incorrect statement, negligently made and justifiably relied on, [and] may be the basis for recovery of damages for economic loss . . . sustained as a consequence of that reliance." Kaufman v. i-Stat Corp., 165 N.J. 94, 109 (2000) (quoting H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983), superseded by statute on other grounds, (internal quotations omitted)).  For the same reasons that summary judgment on Mr. Zarkades's claims of fraud is not appropriate, summary judgment dismissing his claims of negligent misrepresentation is not appropriate and the motion for reconsideration by Intarome and Mr. Funsch is denied.

### III.  CONCLUSION

For the reasons set forth above, Intarome and Mr. Funsch's motion for reconsideration will be denied.  The Court will enter an order implementing this opinion.

                                                            s/Dickinson R. Debevoise
                                          DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: June 8, 2009